**LINCOLN NATIONAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Bridget JOHNSON, Jeremy Johnson, Frances Clark Johnson, and Sara Clark Johnson, Defendants.**

**Civil Action No. 2:98CV439.**

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 8, 1999.

Kenneth Hincks Lambert, Jr., Williams, Kelly & Greer, P.C., Norfolk, VA, for plaintiff.

David Harlen Sump, Crenshaw, Ware & Martin, Norfolk, VA, Robert Griffith Jones, Virginia Beach, VA, for defendants.

## ORDER and OPINION

MORGAN, District Judge.

This matter came before the Court on Defendants Bridget Johnson ("Bridget") and Jeremy Johnson's ("Jeremy") Motion to Dismiss the Interpleader Claims of Defendants Frances Clark Johnson ("Frances") and Sara Clark Johnson ("Sara"), ("Motion to Dismiss"). For the reasons set forth below the Court GRANTS the Motion to Dismiss and DISMISSES Frances's and Sara's interpleader claims to the Proceeds of the Plaintiff's, Lincoln National Life Insurance Company ("Lincoln National"), life insurance policy ("the Policy" and "the Proceeds") by which the Plaintiff has insured Douglas Johnson ("Douglas"), the deceased. The effect of such dismissal is to award all of the Policy's Proceeds to Bridget and Jeremy.

## I. Factual [1] and Procedural History

Plaintiff, Lincoln National, filed this Complaint for Interpleader and Declaratory Relief on April 22, 1998, against Defendants Bridget, Jeremy, Frances, and Sara (collectively "Defendants"). Plaintiff alleges in its Complaint that this Court has jurisdiction based upon diversity of citizenship and upon the federal interpleader statute, 28 U.S.C. § 1335. Lincoln National is incorporated in Indiana, and has its principal place of business there. Bridget is a citizen of the state of North Carolina, while Jeremy, Frances, and Sara are all citizens of the Commonwealth of Virginia. The Defendants are all rival claimants to the Proceeds of Lincoln National's policy of group insurance pursuant through which Lincoln National insured the life of Douglas. The Plaintiff states that the sum payable under the policy is greater than $500.

The Plaintiff states that on July 1, 1980, it insured the life of Douglas Johnson for $90,000 through its Group Policy Number G–39989, issued to the Military Benefit Association. The application for the Policy, listed Elena E. Johnson ("Elena"), Douglas' first wife, as the primary beneficiary, and designated as contingent beneficiaries, "all children to share and share alike." Douglas and Elena's marriage produced two children, Bridget and Jeremy. Elena and Douglas divorced on April 26, 1994, and the final divorce decree ("Divorce Decree") incorporated their August 19, 1991, stipulation and agreement ("Stipulation and Agreement") in accordance with Virginia Code §§ 20–109 and 20–109.1.

On December 17, 1994, Douglas married Frances Clark. Sara Clark is Frances' daughter from a previous marriage. Douglas passed away on September 27, 1997, in Chesapeake, Virginia. Lincoln National states that it received no change in beneficiary designation from Douglas prior to his death, a fact which none of the Defendants dispute. The Plaintiff further alleges that under Virginia Code § 20–111.1 and the provisions of the Stipulation and Agreement, specifically paragraph 12, that Elena is not a potential claimant to the Proceeds. Furthermore, Elena has not asserted any claim to the Proceeds of the Policy. Sara and Frances have both asserted claims to part of the Proceeds. Sara asserts that she is the adopted daughter of Douglas, and thus, a contingent beneficiary to the Policy. Frances states that she is entitled to the proceeds because of Douglas' intent to include her as a beneficiary. Frances alleges that such intent is evidenced by a change in beneficiary form found among Douglas' personal effects, which he purportedly exe-

---

1. This Opinion views the facts in the light most favorable to the Plaintiff, and all factual findings are for the limited purpose of determination of the Motion to Dismiss.

cuted before his death. Bridget and Jeremy claim the Proceeds pursuant to the provisions of the Divorce Stipulation and Agreement and as contingent beneficiaries. All four of the Defendants are above eighteen years of age.

Lincoln National deposited the $92,-116.85 owed on the Policy with the Court when it filed its Complaint. The Plaintiff's Complaint requested the following relief: (1) that each of the Defendants be restrained from instituting any action against the Plaintiff for the insurance proceeds or any part thereof; (2) that the Defendants be required to interplead among themselves their rights to the insurance proceeds; (3) that the Plaintiff be discharged from all liability except to the person or persons to whom the Court awards the proceeds; and (4) that the Plaintiff recover its costs and attorneys' fees. By Order of April 27, 1998, the $92,116.85 was paid to the Court, and that money was invested by the Clerk of this Court the following day.

On June 24, 1998, Defendant Frances filed her Answer ("Frances' Answer"), which stated that Douglas had repeatedly told her prior to his death that he had provided well for her in the event of his death. Frances' Answer further contends that she relied on Douglas' promises by not taking more actions to protect her own interests, actions which she asserts she would otherwise have taken. Upon her husband's death, Frances discovered that he had failed to finalize the form changing the beneficiary designation by sending it to Lincoln National, as she alleges he had promised to do. Frances' Answer claims that she is entitled to part of the Proceeds because Douglas intended her to have them, as evidenced by the change in beneficiary form received by the Plaintiff after Douglas' death.

Sara filed her Answer ("Sara's Answer") on June 24, 1998. Her Answer states that Douglas had reasonably led her to believe that he would provide for her in the event of his death. Sara's Answer alleges that

Douglas' adoption of her, notwithstanding her majority, and the many hours they spent together, evidence his intent to provide for her after his death. Alternatively, Sara argues that as an adopted child of Douglas she should be awarded part of the Proceeds as one of the Policy's contingent beneficiaries.

Defendant Bridget sent her Waiver of Service to the Plaintiff's counsel on July 17, 1998. On August 7, 1999, Defendants Bridget and Jeremy filed a Motion for Enlargement of Time to File a Responsive Pleading and Brief in Support. None of the parties opposed that Motion, and this Court granted it on August 10, 1998. On August 19, 1998, Bridget and Jeremy filed their Answer ("Bridget and Jeremy's Answer"). Bridget and Jeremy's Answer contends that the Lincoln National never received a valid form changing the beneficiary designation of the Policy prior to Douglas' death. Furthermore, their Answer asserts that the Stipulation and Agreement entered into by Douglas and Elena on August 19, 1991, provided that the parties would maintain all life insurance policies in effect at that time. That Agreement also required Douglas to maintain Elena as the designated beneficiary until a final divorce decree was entered. According to Bridget and Jeremy's interpretation of the Stipulation and Agreement, Douglas was then required to name the ". . .children of the parties" as the Policy's beneficiaries. The final Divorce Decree dissolving the marriage of Douglas and Elena was entered on April 26, 1994. The Divorce Decree ratified and incorporated the prior Stipulation and Agreement. Bridget and Jeremy also contend that none of the parties dispute the fact that they were Douglas and Elena's only children in 1991 and 1994.

Bridget and Jeremy further contend that VA Code § 20–111.1 does not apply to revoke the beneficiaries contained in the Policy because the Divorce Decree, through the incorporation of the Stipulation and Agreement, provides for a con-

trary result as to the Policy. They contend that under Virginia law they are the only beneficiaries of the Policy, and that Douglas' adoption of Sara has no bearing on this result. According to Bridget and Jeremy, Virginia law dictates that the Stipulation and Agreement, as incorporated by the Divorce Decree, supersedes the terms of the Policy. They ask the Court to award them all of the Proceeds.

On November 12, 1999, Bridget and Jeremy filed a Motion to Dismiss the Interpleader Claims of Frances and Sara. On December 9, 1998, Frances and Sara filed an untimely Objection to the Motion to Dismiss ("Frances and Sara's Objection"). Two weeks later, on December 23, 1998, Frances and Sara filed a Motion for an Enlargement of Time to File Their Objection. On December 14, 1998, Bridget and Jeremy filed a Reply to Frances and Sara's Objection ("Reply"). On December 29, 1998, this Court entered an Order dismissing the Plaintiff from this case and enjoining the Defendants from instituting any actions against the Plaintiff relating to this matter. On December 30, 1998, Bridget and Jeremy filed an Objection to Frances and Sara's Motion for an Enlargement of Time. Neither party requested a hearing on the Motion to Dismiss in any of their pleadings or correspondence with the Court.

## II. *Jurisdiction*

The Court notes that the diversity between adverse claimants necessary for statutory interpleader under Title 28 U.S.C. § 1335 is not present because although Bridget is a citizen of North Carolina, Jeremy, Frances and Sara are all citizens of Virginia. *Prudential Insurance Company of America v. Coffman,* 829 F.2d 1120, 1120 (4th Cir.1987)(*citing* 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1703, at 498 (2d ed.1986)). However, this Court does have jurisdiction to entertain this interpleader action by reason of the diversity of the citizenship of between

the Plaintiff (a citizen of Indiana) and the claimants (citizens of Virginia and North Carolina), and the fact that the amount in controversy is greater than $75,000 ($92,-116.85). Title 28 U.S.C. § 1332; Fed. R.Civ.P. 22. Furthermore, because the Court's jurisdiction is based on general diversity, and the situs of the actions giving rise to this matter was the Commonwealth of Virginia, Virginia law governs the respective substantive rights of the claimants. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As to those respective substantive rights, in the absence of precedent, this Court must forecast how the Supreme Court of Virginia would rule. *Doe v. Doe,* 973 F.2d 237, 240 (4th Cir.1992). However, the sufficiency of the pleadings is a procedural matter to which federal law applies. *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996).

## III. *The Federal Standard of Review for a Motion to Dismiss*

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept the facts pleaded by the rival claimants as true. A claim should not be dismissed unless it appears to a certainty that the claimant can prove no facts in support of the claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bruce v. Riddle,* 631 F.2d 272, 273–74 (4th Cir. 1980). The court must accept the factual allegations in the interpleader claims of Frances and Sara and must construe such allegations in the light most favorable to them. *Martin Marietta Corp. v. International Telecommunications Satellite Org.,* 991 F.2d 94, 97 (4th Cir.1992). The court can only rely upon the allegations in the complaint and interpleader claims, and those documents incorporated by reference. *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir.1985),

*cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

### IV. *Consideration of Frances and Sara's Objection*

█ Bridget and Jeremy filed their Motion to Dismiss on November 12, 1998, and Frances and Sara filed their Objection on December 9, 1998, twenty-seven days later. Local Rule 7(E) of the United States District Court for the Eastern District of Virginia provides that "unless otherwise directed by the Court, the opposing party shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service." Therefore, Frances and Sara's Objection was filed sixteen days late. Frances and Sara's Motion for an Enlargement of Time asserts that "the ends of justice will be served by" considering their Objection. While Frances and Sara's Motion for an Enlargement of Time was also untimely filed, the Court **FINDS** no prejudice to Bridget and Jeremy in granting the late filing on the grounds of excusable neglect. Therefore, the Court **GRANTS** Frances and Sara's Motion for an Enlargement of Time to File Their Objection to the Motion to Dismiss, and shall consider their Objection as if timely filed.

### V. *The Motion to Dismiss*

Bridget and Jeremy's Motion to Dismiss sets forth the same argument as their Answer. Specifically, they contend that paragraphs 12 and 15 of the Stipulation and Agreement prohibit Douglas from changing its provisions without the written consent of Elena. They assert that the Stipulation and Agreement provisions are enforceable contract terms and prohibit Douglas from changing the beneficiary designation in the manner requested by Frances and Sara. Bridget and Jeremy also contend that even if Douglas had intended to change the beneficiaries to add either Frances or Sara, he was contractually bound by the Stipulation and Agreement to obtain Elena's written approval to do so. None of the parties dispute the fact that Douglas did not obtain Elena's consent to change the Policy beneficiary designation. Douglas and Elena agreed in the Stipulation and Agreement to substitute "the children of the parties" as beneficiaries to the Policy. The Stipulation and Agreement specifically identifies Bridget and Jeremy as the "children of the parties." Although Virginia has no case on point, they argue that other jurisdictions have overwhelmingly upheld separation agreement provisions which require a party to name an ex-spouse or child as beneficiary of his or her life insurance.

Bridget and Jeremy also contend that the Policy required that the insured notify Lincoln National before another person could become an eligible beneficiary. It is undisputed that Douglas did not give such notice before his death. The Motion to Dismiss asks the Court to dismiss Sara and Frances claims based upon the Stipulation and Agreement and the lack of notice to Lincoln National.

France and Sara first contend that Sara has a claim under the existing contingent beneficiary clause, as she is an adopted child of Douglas. Secondly, they contend that Douglas' conduct evidences his intent to include Frances and Sara as beneficiaries. The conduct relied upon includes his requesting a change of beneficiary designation form, and completing the form on February 16, 1995. That form designated Frances as the beneficiary of the Policy, and was received by the Lincoln National after Douglas' death.

Frances and Sara thirdly contend that under Virginia Code § 20–111.1 and the Stipulation and Agreement, Elena is not a beneficiary of the Policy, because the divorce revoked her designation as a beneficiary. Virginia Code § 20–111.1 further provides that the divorce of the parties causes the Proceeds to be paid as if Elena had predeceased Douglas, and therefore, the contingent beneficiaries, "all children to share and share alike," should receive the Proceeds. Frances and Sara contend

that Douglas never modified the beneficiary designation to limit it to "the children of the parties," Bridget and Jeremy, and therefore, "all children" includes Douglas' adoptive daughter Sara. No party disputes the fact that Douglas adopted Sara prior to his death.

■ Frances and Sara fourthly contend that the United States Constitution prevents legislative action from changing the legally binding contract between Douglas and the Plaintiff.[2]

Bridget and Jeremy argue that Frances' and Sara's Objections fail as a matter of law for two reasons. First, Bridget and Jeremy argue that they are entitled to the Policy's proceeds as a matter of contract, because prior to the Stipulation and Agreement both Douglas and Elena had a property interest in the Policy proceeds. Douglas had an interest in the cash value of the Policy and the right to change the beneficiary, and Elena, it is argued, had an interest in the death benefits. Douglas and Elena each gained and each gave up certain contract rights in the Stipulation and Agreement. Douglas exchanged his right to change the beneficiary for other benefits accruing to him under the Stipulation and Agreement. Bridget and Jeremy contend that under Virginia law the Stipulation and Agreement incorporated in the Divorce Decree is enforceable and should not now be disturbed. Bridget and Jere-

my argue that Frances and Sara failed to consider the last paragraph of § 20–111.1, which states that this section shall not apply if a divorce decree provides for contrary results as to specific death benefits. Therefore, this section allows a written agreement incorporated in a divorce decree to supersede the statutory provision revoking death benefits to an ex-spouse.

Second, Bridget and Jeremy contend that Frances and Sara's reading of the unconstitutionality of VA.Code § 20–111.1 would require the Court to invalidate the entire provision as unconstitutional and award the proceeds to Elena. They add that under the Stipulation and Agreement, Elena would merely be a trustee of the Policy proceeds for Bridget and Jeremy. Therefore, based on their interpretation of the effect of the Divorce Decree and the Stipulation and Agreement on the Policy's beneficiary designation, Bridget and Jeremy allege that they are entitled to the Proceeds as a matter of law.

### Analysis

The Policy designates Elena Johnson as the primary beneficiary. The Policy also states that if Elena predeceases Douglas that "all children [will] share and share alike" as contingent beneficiaries. In a section entitled change of beneficiary, the Policy further provides that:

---

2. Frances and Sara do not specify which legislative provision unconstitutionally interferes with Douglas' right to contract with the Plaintiff. The only statutes before the Court are Virginia Code §§ 20–109.1 and 20–111.1. As to § 20–111.1, Frances and Sara's constitutional argument is inconsistent with the second part of their argument. First, they argue that § 20–111.1 provides that Elena cannot receive the proceeds of the Policy, and therefore, the contingent beneficiaries, including Sara, should receive the proceeds. However, they also argue that a legislative provision cannot interfere with the Policy under the United States Constitution. If their constitutional argument as to § 20–111.1 succeeded, then the Court would have to void that statute as unconstitutional, and thus Elena, as the primary beneficiary, would recover the pro-

ceeds, not Frances or Sara. Accordingly, the Court will not further address the constitutional argument as to Virginia Code § 20–111.1.

As to § 20–109.1, the Court cannot conceive of how this statute unconstitutionally interferes with the Douglas' right to contract. Section 20–109.1 provides that separation agreements which are ratified, affirmed or incorporated by a divorce decree should be regarded as a term of the decree and enforceable in the same manner as the decree. The alleged interference with the Policy would arise, therefore, from the Stipulation and Agreement, another contract, and not any legislative action. Accordingly, the Court will not further address the argument that Virginia Code § 20–109.1 is unconstitutional.

[b]eneficiary changes may be made during the lifetime of a member by written notice from him to Mutual of New York through the Association. Any change will take effect as of the date the notice was signed upon acceptance and recording at Mutual of New York's Home Office, subject to any payment made by Mutual of New York or action taken by it before receipt of the notice at the Home Office.

The Stipulation and Agreement executed between Douglas and Elena on August 19, 1991, states in paragraph 12, entitled Life Insurance, that:

[h]usband shall maintain in full force and effect all insurance on his life, and the beneficiary of such insurances shall be the Wife until such time as a final divorce decree shall be entered by a court of competent jurisdiction. Thereafter the beneficiaries of such insurance shall be the children of the parties.

The Stipulation and Agreement, page one, states that this agreement is made "by and between Elena Johnson...[and] Douglas Johnson." The first page of the Stipulation and Agreement also provides that "the parties have two children, Jeremy W. Johnson, 17, who was born on August 15, 1974, and Bridget Nadine Johnson, 16, who was born on July 2, 1975." It states in paragraph 15 that "any modification or amendment hereto shall only be in writing signed by both parties and not by oral agreement." Paragraph 16 of the Stipulation and Agreement provides that "[t]his Agreement shall be binding on the heirs, executors, personal representatives, and the next of kin of the parties." On April 26, 1994, Elena and Douglas filed a Final Decree of Divorce A Viculo Matrimoni, which states on page 3, paragraph 2, "[t]hat the Stipulation and Agreement dated August 19, 1991 is ratified and affirmed and the same is incorporated herein by this reference and the parties shall abide by the terms thereof."

Virginia Code § 20–109.1 ("§ 20–109.1") allows parties to incorporate or affirm valid separation agreements through their divorce decree. Section 20–109.1 further states that where the court "affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." A second provision of the Virginia Code, § 20–111.1 ("§ 20–111.1"), provides that:

[u]pon the entry of a decree of annulment or divorce from the bond of matrimony on and after July 1, 1993, any revocable beneficiary designation contained in a then existing contract owned by one party that provides for the payment of any death benefit to any other party is revoked. A death benefit prevented from passing to a former spouse by this section shall be paid as if the former spouse had predeceased the decedent. The payor of any death benefit shall be discharged from any liability upon payment in accordance with the terms of the contract providing for the death benefit, unless the payor receives written notice of a revocation under this section prior to payment.

The term *"death benefit"* includes any payments under a life insurance contract, annuity, retirement arrangement compensation agreement or other contract designating a beneficiary of any right, property or money in the form of a death benefit.

This section shall not apply (i) to the extent a decree of annulment or divorce from the bond of matrimony, or a written agreement of the parties provides for a contrary result as to specific death benefits, or (ii) to any trust or any other death benefit payable to or under any trust.

 Regarding the interpretation of separation agreements, the Virginia Supreme Court has held that "[p]roperty settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of con-

tracts generally." *Southerland v. Estate of Southerland,* 249 Va. 584, 588, 457 S.E.2d 375, 377 (1995); *see Wells v. Weston,* 229 Va. 72, 326 S.E.2d 672 (1985); *Eaton v. Eaton,* 215 Va. 824, 826, 213 S.E.2d 789, 791 (1975); *Paul v. Paul,* 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974). Virginia adheres to the "'plain meaning' rule: [w]here an agreement is plain on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. . . . . This is so because the writing is the repository of the final agreement of the parties." *Berry v. Klinger,* 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). In reviewing the Agreement, we examine the entire instrument, giving full effect to the words actually used by the parties. *Southerland,* 249 Va. at 589, 457 S.E.2d at 378 (*citing Layne v. Henderson,* 232 Va. 332, 337–38, 351 S.E.2d 18, 22 (1986)). The cardinal rule of contract interpretation is that the intent of the parties as expressed in the contract controls. *Bender–Miller Co. v. Thomwood Farms, Inc.,* 211 Va. 585, 588, 179 S.E.2d 636, 639 (1971) (citations omitted).

The Virginia Supreme Court has further held that the:

> act of placing [a separation agreement] before the court is the act of the parties. The acts of approving the agreement and setting it out in the decree are acts of the court and the parties are vested with the property rights therein stated by virtue of the judicial sanction and determination of the court and not by the act of the parties in laying the agreement before it.

*Higgins v. McFarland,* 196 Va. 889, 894–95, 86 S.E.2d 168, 172 (1955)(*citing Barnes v. American Fertilizer Co.,* 144 Va. 692, 720, 130 S.E. 902 (1925)). *Higgins v. McFarland* involved an action by the first wife of the decedent against his estate and his second wife to enforce the payment of a balance due under the first wife's divorce action and approved by their final divorce decree. 196 Va. at 890, 86 S.E.2d at 169–

70. That Court held that the decedent's estate and his second wife had no right after his death to attack the validity of the contract between him and his first wife settling their property rights because the decedent had not previously challenged that contract, and he had accepted the contract's benefits and complied with its terms until his death. *Id.* at 891, 897, 86 S.E.2d at 170, 173.

## A. The Provisions of the Stipulation and Agreement and Va.Code § 20–111.1

▮ The validity of the Stipulation and Agreement and the Divorce Decree are not disputed. nor is it contended that the life insurance provision was amended. The language of the Stipulation and Agreement entered into by the parties on August 19, 1991, and later affirmed by the court through its incorporation into the Divorce Decree of April 26, 1994, is clear and unambiguous. Therefore, in its interpretation of the Stipulation and Agreement, the Court must adhere to the plain meaning of its terms. *Berry,* 225 Va. at 208, 300 S.E.2d at 796. The Stipulation and Agreement required Douglas to maintain his current life insurance policies, maintain Elena as the designated beneficiary until the divorce was final, and then designate "the children of the parties" as the beneficiaries following the final divorce decree. Stipulation and Agreement of August 19, 1991, ¶ 12. The Stipulation and Agreement identifies the parties to it as Douglas Johnson and Elena Johnson. *Id.* at p. 1. The Stipulation and Agreement specified that the children of the parties were "Jeremy . . . , and Bridget." *Id.* The Court **FINDS** that the Stipulation and Agreement was incorporated into the Divorce Decree and is therefore, a valid contract. *Southerland,* 249 Va. at 588, 457 S.E.2d at 377. The Court further **FINDS** that the Stipulation and Agreement required that Douglas designate, and thereafter maintain, Bridget and Jeremy as the beneficiaries of the Policy unless and until

the Stipulation and Agreement was modified in accordance with its provisions.

Section 20–111.1 does not apply to revoke the beneficiary designation of an ex-spouse if a divorce decree or separation agreement provides a contrary result for specific death benefits. The Court **FINDS** that the Stipulation and Agreement provides such a contrary result. Therefore, the Court further **FINDS** that the provisions of § 20–111.1 do not revoke the designation of beneficiaries in the Stipulation and Agreement. Instead, Elena's beneficiary designation was revoked by the Stipulation and Agreement, which also provided a result contrary to the statutory provision. Elena has not asserted any claim to the proceeds, and under the terms of the Stipulation and Agreement the "children of the parties" receive the proceeds.

Bridget and Jeremy have not disputed the fact that Douglas adopted Sara prior to his death. Furthermore, on a Motion to Dismiss the Court must view the facts in the light most favorable to the non-movants, and therefore, the Court must resolve the meaning of the beneficiary designation "to all children to share and share alike" to include Sara. *Martin Marietta,* 991 F.2d at 97. However, the issue is what effect does the Stipulation and Agreement have on the validity of the beneficiary designations of the Policy.

### B. The Effect of the Stipulation and Agreement on the Provisions of the Policy

The Supreme Court of Virginia has held that "one named as a beneficiary has no vested interest and is not entitled to notice of change; that the right to change a beneficiary is a property right of the assured. . . ." *Helen Snyder Vellines v. Delma L. Ely,* 185 Va. 889, 898, 41 S.E.2d 21, 25 (1947) (citations omitted). Not only is the right to collect the cash surrender of these policies a property right, but the right to change the beneficiary also is a property right. *Id.* at 899, 41 S.E.2d at 25.

Furthermore, "when an insured pays the full contract price for an insurance policy and reserves the right to change the beneficiary at will, such contract is the absolute property of the insured and he should have the same right to dispose of the property as he has to bequeath and devise his other assets." *Smith v. Coleman,* 184 Va. 259, 267–68, 35 S.E.2d 107, 111 (1945). If the insured retains the right to change the beneficiary, the beneficiary's rights in the proceeds vest upon the death of the insured. *Id.* at 269, 35 S.E.2d at 112. During the life of the insured, the beneficiary has no vested interest in the policy, but rather has a mere expectancy similar to that of a legatee during the life of a testator. *Id.* at 270, 35 S.E.2d at 112. However, if no change was made in the policy, upon the death of the insured, the rights of the beneficiary became fixed and vested. *Id.*

The Virginia Supreme Court has also held that when an insured borrows money from an insurance company and secures that loan with a first loan on the proceeds of his life insurance policy, that the beneficiary is only entitled to the remainder of the proceeds after repayment of the loan. *Walker v. Penick's Ex'r,* 122 Va. 664, 95 S.E. 428 (1918); *but see Smith,* 184 Va. at 273, 35 S.E.2d at 114 (holding that beneficiary could recover from insured's estate the full amount of the insurance policy proceeds when insured had used policies as collateral security to secure a debt with third party. The *Smith* Court distinguished *Walker* by noting that in *Walker* it was clearly established that the insured intended to limit the recovery of the beneficiary to the amount of proceeds left after the proceeds were applied to pay the debt to the insurance company. The *Smith* court reached a contrary result based on the designation of the proceeds as collateral or secondary security, and not primary security.).

The Supreme Court of Virginia has not ruled directly on what effect a stipulation and agreement incorporated into a first

divorce decree has on the property right allowing an insured to change the beneficiary designation of his life insurance policy. However, several other jurisdictions have held that a separation agreement containing a provision restricting the right to change a beneficiary, or requiring an individual to be named the beneficiary, takes precedence over future attempts by the insured to change the beneficiary in contravention of his or her earlier contract. The Fourth Circuit has held that under Maryland law a change in beneficiary would be effective, despite the existence of a separation agreement, if, but only if, the second beneficiary had given value for the change without notice of the designated beneficiary's prior interest. *Equitable Life Assurance Society of the United States v. Jones,* 679 F.2d 356, 359 (1982). The *Jones* Court also noted that under Maryland law marriage may be consideration for a contract. *Id.* (citations omitted). A United States District Court in West Virginia, applying West Virginia law, held that if the insured gave up the right to change the beneficiary then that beneficiary stands in the position of a third party beneficiary to the insurance contract with indefeasibly vested rights in the proceeds. *Perkins v. Prudential Insurance Co. of America,* 455 F.Supp. 499, 501 (1978) (citations omitted). Furthermore, *Perkins* held that if a judicial decree requires an insured to designate or change a beneficiary under the policy and he fails to do so, an equitable assignment arises in favor of the person designated by the judicial decree as a beneficiary. *Id.* (citations omitted).

More recently, a Court in the Eastern District of Missouri held that under Missouri law, a property settlement and divorce decree which provide for a certain party to be named beneficiary of a life insurance policy are valid and enforceable against anyone subsequently named as beneficiary. *Principal Mutual Life Ins. Co. v. Karney,* 5 F.Supp.2d 720, 731 (1998) (citation omitted). The *Karney* Court went on to say that where beneficiaries

have a vested equitable interest or a property right in the proceeds of the policy by contract of the parties, that interest may not be defeated by an effort to change the beneficiaries without their consent. *Id.* In 1991, the Supreme Court of New Hampshire held that where a separation agreement incorporated into a divorce decree required the insured to make his children the beneficiary of his insurance policies, that the insured had contracted away his right to name anyone else as beneficiary. *Dubois v. Smith,* 135 N.H. 50, 57, 599 A.2d 493, 497 (1991). In *Dubois,* the insured had failed to name his children beneficiaries as required, and subsequently attempted to name his second wife beneficiary of his policies. *Id.* The *Dubois* Court also held that the incorporation of the separation agreement into the divorce decree bound the insured until further order of the Court, and therefore, his sons had acquired "a vested right to the proceeds superior to anyone else named beneficiary." *Id.* In reaching its decision, the New Hampshire Supreme Court stated that "this view appears to be widely held," and cited decisions by the Supreme Court of Utah and a Michigan Court of Appeals. *Id.* at 56–57, 599 A.2d at 497. (*citing Travelers Insurance Co. v. Lewis,* 531 P.2d 484, 485 (Utah 1975); *Wiltz v. John Hancock Mut. Life Insurance Co.,* 58 Mich.App. 604, 607–08, 228 N.W.2d 484, 486 (1975)).

Other Courts have reached similar results. *Herrington v. Boatright,* 633 S.W.2d 781, 783 (Tenn.Ct.App.1982)(holding that where divorce decree required husband to keep insurance policies in effect and designate former wife as beneficiary, that former wife had vested interest in policies); *Glover v. Metropolitan Life Insurance Co.,* 664 F.2d 1101, 1103 (8th Cir.1981)(affirming district court ruling that under Missouri law that the separation agreement and divorce decree gave ex-wife an indefeasible contract right to the policy proceeds); *Murphv v. Travelers Insurance Co.,* 534 F.2d 1155 (5th Cir.1976)(holding that under California law

the property settlement agreement at issue created a vested equitable interest in the insured's children which was not defeated by the subsequent formal change of beneficiary naming his second wife. That court noted that under Texas law it would have reached the same result.); *Western Life Insurance Co. v. Bower*, 153 F.Supp. 25 (1957)(holding that under Montana law property settlement agreement provision wherein husband divested himself of the right to change policy beneficiary was enforceable where consideration therefor was release of wife's property rights and not the divorce). In addition to the Courts which have reached this result, one of the authoritative treatises on insurance law, Couch on Insurance, observes that:

> [w]here one spouse is required, as part of the judgment decree or settlement, to obtain or maintain life or other insurance in a certain amount designating a child or children as beneficiaries, then the right of such spouse to change the beneficiary of such policy will generally not be recognized by a court, and where the former spouse attempts to change the designated beneficiary in derogation of such decree or settlement, a constructive trust for the benefit of the children will be enforced. . .

> The Courts will also effect a change of beneficiary by enforcing such a decree or settlement order where the former spouse failed to make an original designation or change the existing designation in accordance with a decree or settlement requiring the spouse to maintain insurance for the benefit of minor children.

M. Rhodes,4 Couch on Ins. § 64:29 (3rd Ed.1998) (hereinafter "Couch").

Cases which reach a contrary result have involved federal insurance policies which preempt state law. A United States District Court in Ohio held that a beneficiary properly designated by the insured under his Federal Employees Group Life Insurance takes precedence over any other beneficiary, even if non-designated individual has a valid claim under state law. *Matthews v. Matthews*, 926 F.Supp. 650, 652 (N.D.Ohio 1996). Additionally, the Tennessee Court of Appeals also held in *Herrington* that notwithstanding any provision to the contrary in a separation agreement, the insured's second policy, a National Service Life Insurance policy, afforded him the right to change beneficiaries under the policy up to the time of his death because the statutes creating that insurance clearly stated an intent to preempt state law. 633 S.W.2d at 785.

The Court has previously found that the Stipulation and Agreement was a valid contract between Douglas and Elena, and was affirmed and incorporated in their subsequent divorce decree. Furthermore, the Court found that the plain meaning of those agreements required Douglas to designate Elena as the beneficiary until the divorce was final, and then to designate Bridget and Jeremy as beneficiaries of the Policy unless and until the Stipulation and Agreement was properly modified. Douglas, who initially owned the Policy, bargained away his property right to control the beneficiary designation when he entered into the Stipulation and Agreement. However, Sara argues she is entitled to a share of the benefits upon the existing beneficiary designation. This Court forecasts that the Virginia Supreme Court would hold that a contractual obligation such as the Stipulation and Agreement takes precedence over the existing beneficiary designation and any expectancy interest of Frances or Sara. A contrary finding would permit a party to a valid Stipulation and Agreement to modify it through a unilateral act or omission. Therefore, the Court **FINDS** as a matter of law that the contractual obligations of the Stipulation and Agreement, as incorporated into the Divorce Decree, supersede the beneficiary designations of the Policy and also supersede any expectancy inter-

est of Frances and Sara.[3]

## VI. Conclusion

The Court **GRANTS** Frances and Sara's Motion for an Enlargement of Time, and therefore, considers their Objection to the Motion to Dismiss as timely filed. The Court **FINDS** that the Stipulation and Agreement was incorporated into the Divorce Decree, and thus it is a valid contract which required Douglas to designate, and thereafter maintain, Bridget and Jeremy as the beneficiaries of the Policy unless and until a proper modification of the Stipulation and Agreement occurred. The Court **FINDS** that there is no allegation of such a modification. The Court further **FINDS** that Va.Code § 20–111.1 does not apply to revoke the Policy's designation of Elena as primary beneficiary and thereby grant any rights to Frances and Sara because the Stipulation and Agreement provides a contrary result. Additionally, the Court **FINDS** as a matter of law that the contractual obligations of the Stipulation and Agreement supersede the beneficiary designations of the Policy. The Court **FINDS** that Defendants Frances and Sara have alleged no facts upon which their claims to the Policy's Proceeds could be granted, and therefore, **GRANTS** Defendants Bridget and Jeremy's Motion to Dismiss. Accordingly, the Court **ORDERS** that the Clerk disperse the Proceeds deposited by the Plaintiff in equal shares to the children of the parties, Bridget Johnson and Jeremy Johnson.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED.**

---

3. The Court **NOTES** that even if Douglas' actions could be interpreted as changing the beneficiary to Frances or Sara or as meeting the Policy's requirements to change the beneficiary to either of them, any such purported change would be void as contrary to the Stipulation and Agreement.